1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY JAMES GIBBS,

11            Petitioner,              No. CIV S-03-1855 LKK EFB P

12        vs.

13   D. L. RUNNELS, Warden, et al.,

14            Respondents.            FINDINGS & RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 1999 judgment of

18   conviction entered against him in Sacramento County Superior Court on charges of four counts

19   of lewd and lascivious conduct with a minor and three counts of pandering.  He seeks relief on

20   the grounds that: (1) his right to due process was violated by juror misconduct; (2) the prosecutor

21   committed misconduct; and (3) his trial and appellate counsel rendered ineffective assistance.

22   Upon careful consideration of the record and the applicable law, the undersigned recommends

23   that petitioner's application for habeas corpus relief be denied.

24   ////

25   ////

26   ////

1

I.      **Procedural and Factual Background**[1]

> A jury convicted [petitioner] Anthony Gibbs of four counts of lewd and lascivious conduct and three counts of pandering involving Jonnisha A. [Petitioner] received a total prison sentence of 13 years . . .

> In January 1996, [petitioner] and Jonnisha, then 14 years old, began a sexual relationship.  This sexual relationship continued until Jonnisha was 16 years old.

> In April and May 1998, while [petitioner] was in the Sacramento County Jail, he wrote letters to Jonnisha discussing prostitution.  In these letters [petitioner] instructed Jonnisha on prostitution, including where to go, what to say, and what to charge for sexual acts.

> In September 1998, after [petitioner] was released from custody, he helped Jonnisha find locations to be a prostitute, set charges for sex acts, bought her condoms, and provided her with personal protection.  Jonnisha began prostituting herself in Sacramento.

> On September 15, 1998, Jonnisha picked up an undercover officer. She and the officer drove to a nearby motel and entered a room in the motel.  The officer revealed his identity and placed Jonnisha under arrest.  While searching the motel room, an assisting officer found the defendant dressed in his underwear and sitting in the bathroom.

II.     **Analysis**

**A.  Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1]  The following summary is drawn from the April 30, 2001 opinion by the California Court of Appeal for the Third Appellate District in *People v. Gibbs*, No.C034645 (April 30, 2001) (hereafter Opinion), a copy of which is attached as Exhibit D to Respondent's Answer, filed March 4, 2004.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

1                   (2) resulted in a decision that was based on an unreasonable
                   determination of the facts in light of the evidence presented in the

2                    State court proceeding.

3 28 U.S.C. § 2254(d).

4      Under section 2254(d)(1), a state court decision is "contrary to" clearly established

5 United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

6 set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

7 indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

8 result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

9 (2000)).

10      Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas

11 court may grant the writ if the state court identifies the correct governing legal principle from the

12 Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

13 case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because

14 that court concludes in its independent judgment that the relevant state-court decision applied

15 clearly established federal law erroneously or incorrectly. Rather, that application must also be

16 unreasonable." Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

17 enough that a federal habeas court, in its independent review of the legal question, is left with a

18 'firm conviction' that the state court was 'erroneous.'")

19      The court looks to the last reasoned state court decision as the basis for the state court

20 judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a

21 decision on the merits but provides no reasoning to support its conclusion, a federal

22 habeas court independently reviews the record to determine whether habeas corpus relief is

23 available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

24      **B. Petitioner's Claims**

25          **1. Juror Misconduct**

26      Petitioner's first claim is that his right to due process was violated by juror misconduct.

1    Petitioner raised this claim in a petition for a writ of habeas corpus filed in the Sacramento

2    County Superior Court.  Answer, Ex. G.  Citing *In re Dixon*, 41 Cal.2d 756, 759 (1953) and *In re*

3    *Harris*, 5 Cal.4th 813, 829, the Superior Court denied petitioner's claim of juror misconduct on

4    the ground that it "could have been raised on appeal."  Answer, Ex. H.  Petitioner subsequently

5    raised his claim of juror misconduct in a habeas corpus petition filed in the California Court of

6    Appeal.  Answer, Ex. I.  The California Court of Appeal denied the petition with at citation to *In*

7    *re Hillery*, 202 Cal.App.2d 293 (1962).[2]  Answer, Ex. J.  Petitioner raised his juror misconduct

8    claim again in a petition for a writ of habeas corpus filed in the California Supreme Court.

9    Answer, Ex. K.  That petition was summarily denied by order dated July 30, 2003.  Answer, Ex.

10   L.

11            Respondents argue that the Superior Court's citation to *In re Dixon* constitutes a

12   procedural bar precluding this court from considering the merits of petitioner's claim of juror

13   misconduct.  Answer at 11-14.  The court will address this contention below.

14                          **a.  Procedural Default**

15            State courts may decline to review a claim based on a procedural default.  *Wainwright v.*

16   *Sykes*, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will not review a

17   question of federal law decided by a state court if the decision of that court rests on a state law

18   ground that is independent of the federal question and adequate to support the judgment.'"

19   *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting

20   *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is

21   "firmly established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424

22   (1991)).  *See also Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed

23   adequate, the state law ground for decision must be well-established and consistently applied.")

24   ─────────────────

25            [2]  In *In re Hillery*, the court held that the Court of Appeal "has discretion to refuse to
     issue the writ as an exercise of original jurisdiction on the ground that application has not been
26   made therefor in a lower court in the first instance."  202 Cal.App.2d at 294.

                                              4

The state rule must also be "independent" in that it is not "interwoven with the federal law." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 749-50.

Procedural default is an affirmative defense, and the state has the burden of showing that the default constitutes an adequate and independent ground.  *Insyxiengmay v. Morgan*, 403 F.3d 657, 665-66 (9th Cir. 2005); *Bennett*, 322 F.3d at 585-86.  The *Dixon* bar may be "independent" as applied in this case.  *See Bennett*, 322 F.3d  at 581-83.  However, respondents have not met their burden of demonstrating that the *Dixon* bar is "adequate," having been regularly and consistently applied in habeas actions post-1993.[3]  322 F.3d at 583-86.  *See also Wyrick v. Newland*, No. C 03-5623 JSW, 2007 WL 760529, at *5-6 (N.D. Cal. Mar. 9, 2007) (rejecting argument that citation to *Dixon* constituted adequate procedural bar and finding that the state had failed to meet its burden of proof under *Bennett* of establishing the adequacy of the procedural bar to preclude federal review).  This court finds respondents' claim of procedural default unpersuasive.  Accordingly, the court will address petitioner's claim of juror misconduct on the merits.

As explained above, after the California Superior Court rejected petitioner's claim of juror misconduct on procedural grounds, petitioner raised the claim again in habeas petitions filed in the California Court of Appeal and the California Supreme Court.  The Court of Appeal exercised its discretion to deny the claim because it had not been raised in the Superior Court.

////

---

[3]  The Ninth Circuit has held that the *Dixon* procedural bar was not firmly established and consistently applied at least prior to 1993 and therefore cannot constitute an independent and adequate state procedural bar prior thereto.  *See Cooper v. Calderon*, 255 F.3d 1104, 1111 (9th Cir. 2001); *Fields v. Calderon*, 125 F.3d 757, 765 (9th Cir. 1997).

1    The Supreme Court summarily denied the petition, thereby adopting the reasoning of the Court

2    of Appeal.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one

3    reasoned state judgment rejecting a federal claim, later unexplained orders upholding that

4    judgment or rejecting the same claim rest upon the same ground" and where "the last reasoned

5    opinion on the claim explicitly imposes a procedural default, we will presume that a later

6    decision rejecting the claim did not silently disregard that bar and consider the merits" ).

7    Because all of the California courts to consider petitioner's claim of juror misconduct denied the

8    claim on procedural grounds and not on the merits, the claim must now be reviewed de novo.

9    *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003) (when a state court has not reached the

10   merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

11   deferential standard does not apply and a federal habeas court must review the claim de novo);

12   *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (same).  Accordingly, this court will

13   review de novo petitioner's claim of juror misconduct.

14                    **b.  Petitioner's Claim**

15           Petitioner claims that his conviction should be reversed because of juror misconduct.

16   Specifically, he claims that one of his jurors lied during voir dire and was exposed to improper

17   "extrajudicial contacts & statements."  Pet. at 5.

18           The state court record reflects that after the jury verdict was rendered but before

19   sentencing proceedings began, the trial court summoned one of petitioner's jurors (Juror No. 6)

20   for questioning because petitioner had told his trial counsel that the juror was a former friend of

21   his.  Reporter's Transcript on Appeal (RT) at 426-28.  Upon being questioned, the juror

22   informed the trial court that, although she recognized petitioner's face when she first saw him in

23   the courtroom, she had never met him before and did not know his name.  *Id.* at 430-31.  She

24   stated that she found out after the trial that petitioner was a friend of her cousin's.  *Id.* at 431.

25   ////

26   ////

6

1  She testified:

2          I do not know [petitioner].  I have never known [petitioner].  I have
3          seen his face, yes, but I do not know him.  I never had a
           conversation with him, nothing.

4  *Id.* at 435.  Juror No. 6 also testified that petitioner did not know her.  *Id.* at 436.  She stated that

5  if she had known petitioner, she would "have known to dismiss [herself] from the . . . trial."  *Id.*

6  at 435.  When asked why she didn't inform the court that she recognized petitioner's face, she

7  responded that she "didn't think it was important because I don't know him."  *Id.* at 445.  She

8  explained that the judge asked the jurors if they "knew the Defendant.  I don't know the

9  Defendant."  *Id.* at 446.

10        The juror also stated that, the day before deliberations began, a woman who she believed

11  to be petitioner's mother approached her in the elevator, asked her whether she was "EJ's

12  cousin," and told her that "EJ said vote no on all counts."  *Id.* at 432, 434.  The juror

13  immediately pulled her arm from the woman's grasp and said, "Ma'am, I am not allowed to

14  discuss this case."  *Id.*  The woman "tried to hold [her] in the elevator for a few seconds," but the

15  juror pulled her arm from the woman's grasp again and repeated that she was not allowed to

16  discuss the case.  *Id.*  When asked why she didn't inform the court about this incident, especially

17  in light of the court's admonition to advise the court if there was any reason a juror could not be

18  fair or impartial, the juror responded that she didn't know petitioner and "when his mother

19  approached me, I just disregarded it."  *Id.* at 446.  She explained that she "didn't take into

20  consideration what [the woman] had said" and she "didn't feel that it was important."  *Id.* at 448.

21        At one point during the juror's questioning, the trial judge stated, "my interest is whether

22  this witness knew [petitioner] at the time she served on the jury, and the answer to that question

23  seems to me plainly no from this witness."  *Id.* at 440-41.  The court did not rule on whether

24  misconduct had occurred, but gave petitioner's trial counsel time to consider whether to file a

25  motion for new trial on the basis of juror misconduct.  *Id.* at 455-56.  No motion for new trial

26  was filed on this basis.

### c. Applicable Law – Actual or Presumed Juror Bias

The Sixth Amendment right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). *See also Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Green v. White*, 232 F.3d 671, 676 (9th Cir. 2000). Due process requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Jurors are objectionable if they have formed such deep and strong impressions that they will not listen to testimony with an open mind. *Irvin*, 816 U.S. at 722 n.3. A defendant is denied the right to an impartial jury if even one juror is biased or prejudiced. *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (en banc); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979). Thus, "[t]he presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *Gonzalez*, 214 F.3d at 1111 (quoting *Dyer*, 151 F.3d at 973 n.2).

Courts have analyzed juror bias under two theories, actual bias and implied (or presumed) bias, either of which may support a challenge of a prospective juror for cause. *Fields v. Brown*, 503 F.3d 755, 766 (9th Cir. 2007). Actual bias is "'bias in fact' – the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Gonzalez*, 214 F.3d at 1112 (quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)). "Although actual bias is the more common grounds for excusing jurors for cause, '[i]n extraordinary cases, courts may presume bias based upon the circumstances.'" *Gonzalez*, 214 F.3d at 1112 (quoting *Dyer*, 151 F.3d at 981). *See also McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556-57 (1984). Thus, the Ninth Circuit has, in several cases, presumed bias from "the 'potential for substantial emotional involvement, adversely affecting impartiality,' inherent in certain relationships." *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990) (quoting *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977)). *See also Green*, 232

////

////

8

1    F.3d at 676; *Gonzalez*, 214 F.3d at 1112-14; *Dyer*, 151 F.3d at 981-82; *Eubanks*, 591 F.2d at

2    517.[4]

3            The distinction between actual and implied bias has been explained as follows:

4                    Unlike the inquiry for actual bias, in which we examine the juror's
                     answers on voir dire for evidence that she was in fact partial, the

5                    issue for implied bias is whether an *average person in the position
                     of the juror in controversy* would be prejudiced.  Accordingly, we

6                    have held that prejudice is to be presumed where the relationship
                     between the prospective juror and some aspect of the litigation is

7                    such that it is highly unlikely that the average person could remain
                     impartial in his deliberations under the circumstances.

8

9    *Gonzalez*, 214 F.3d at 1112 (citations and internal quotes omitted) (emphasis in original).

10   Accordingly, implied bias may be found despite a juror's denial of any partiality.  *Torres*, 128

11   F.3d at 45 ("And in determining whether a prospective juror is impliedly biased, 'his statements

12   upon voir dire [about his ability to be impartial] are totally irrelevant.'"); *Gonzales v. Thomas*, 99

13   F.3d 978, 987 (10th Cir. 1996); *United States v. Nell*, 526 F.2d 1223, 1229 n.8 (5th Cir. 1976)

14   (The concept of implied or presumed bias arises from "situations in which the circumstances

15   point so sharply to bias in a particular juror that even his own denials must be discounted.").

16   Implied bias is bias conclusively presumed as a matter of law.  *United States v. Wood*, 299 U.S.

17   123, 133 (1936); *United States v. Greer*, 285 F.3d 158, 171 (2d Cir.  2000) (citing *Torres*, 128

18   F.3d at 45).  On collateral review, a petitioner alleging juror misconduct must show that the

19   _____

20           [4] In *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1062 (9th Cir. 1997), the Court of
     Appeals for the Ninth Circuit described four fact situations where juror bias might be implied:

21                   (1) where the juror is apprised of such prejudicial information
                     about the defendant that the court deems it highly unlikely that he

22                   can exercise independent judgment even if the juror states he will,
                     (2) the existence of certain relationships between the juror and the

23                   defendant, (3) where a juror or his close relatives have been
                     personally involved in a situation involving a similar fact pattern,

24                   and (4) where it is revealed that the juror is an actual employee of
                     the prosecuting agency, that the juror is a close relative of one of

25                   the participants in the trial or that the juror was a witness or
                     somehow involved in the underlying transaction.

26

1    alleged error " 'had substantial and injurious effect or influence in determining the jury's

2    verdict.'" *Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993) (quoting *Brecht v. Abrahamson*,

3    507 U.S. 619, 637 (1993)).

4         In *McDonough*, a juror failed to inform the trial court, after a question on voir dire

5    seeking to elicit information about previous injuries to members of the juror's immediate family

6    that resulted in disability or prolonged pain, that his son had sustained such an injury.  464 U.S.

7    at 550.  The juror explained that he did not believe his son's injury (a broken leg) was relevant to

8    the trial court's inquiry because it did not result in disability or prolonged pain.  *Id.* at 552 n.3.

9    In declining to order a new trial on the basis of juror bias, the United States Supreme Court

10   explained:

11              To invalidate the result of a three-week trial because of a juror's
              mistaken, though honest response to a question, is to insist on
12              something closer to perfection than our judicial system can be
              expected to give.  A trial represents an important investment of
13              private and social resources, and it ill serves the important end of
              finality to wipe the slate clean simply to recreate the peremptory
14              challenge process because counsel lacked an item of information
              which objectively he should have obtained from a juror on voir
15              dire examination.

16   *Id.* at 555.  The Supreme Court held in that case that "to obtain a new trial in such a situation, a

17   party must first demonstrate that a juror failed to answer honestly a material question on voir

18   dire, and then further show that a correct response would have provided a valid basis for a

19   challenge for cause."  *Id.* at 556.

20         In *Fields*, a juror in a rape trial disclosed on voir dire that his wife had been assaulted and

21   beaten, but failed to specify that she had also been raped.  When questioned after the verdict at

22   an evidentiary hearing before the federal district court about this voir dire answer, the juror

23   explained that when he volunteered that his wife had been assaulted and beaten, he expected for

24   people in the courtroom to understand that she had been sexually abused.  *Fields*, 503 F.3d at

25   765.  The juror testified that, if asked, he would have said that he could be fair and impartial.  *Id.*

26   ////

1  He explained that he told the truth when he stated he would base his decision strictly on the

2  evidence presented, and stated that he did his best to be a fair juror.  *Id.*  The district court found

3  that the juror was not dishonest during voir dire, that he was not actually biased, and that

4  application of the implied bias doctrine in the absence of juror dishonesty would be a new rule

5  barred by *Teague v. Lane*, 489 U.S. 288 (1989).  *Fields*, 503 F.3d at 763.  The Court of Appeals

6  for the Ninth Circuit agreed, concluding, first, that the juror did not respond dishonestly on voir

7  dire and did not intend to mislead the trial court when he used the word "assault" instead of

8  "rape" and "kidnap" to describe what had happened to his wife.  *Id.* at 767.  To the extent the

9  juror may have been mistaken in assuming that the words he used would make it apparent that

10  his wife had also been raped, the Ninth Circuit concluded that this was "an honest mistake for a

11  layperson to make."  *Id.*  The Ninth Circuit also concluded that there was no evidence the juror

12  harbored "actual bias" and that the facts indicated the juror had remained impartial,

13  notwithstanding what had happened to his wife.  *Id.* at 767-68.

14       Finally, the Ninth Circuit found that the juror in question did not harbor implied bias.

15  The court noted that the United States Supreme Court has never held that a juror was impliedly

16  biased in the absence of juror dishonesty.  *Id.* at 771.  In addition, the Ninth Circuit has

17  recognized that "it is an unresolved question whether dishonesty is a necessary predicate to a

18  finding of juror bias."  *Id.*  The court in *Fields* also noted that the similarity of experiences

19  involving the juror and the defendant was due to the juror's wife's experience, not his own.  The

20  court stated, "[a]lthough we have recognized that bias may be implied where close relatives of a

21  juror "have been personally involved in a situation involving a similar fact pattern . . . we have

22  never done so when the juror was honest on voir dire."  *Id.* at 773.  The Ninth Circuit concluded:

23              Given [the juror's] honest response on voir dire that revealed a
             potentially disqualifying relationship, but not an extreme or
24              extraordinary one, and the results of the evidentiary hearing which
             disclosed no actual bias, we see no basis for inferring bias now as a
25              matter of law.

26  *Id.* at 775.

11

### d.  Petitioner's Relationship with Juror No. 6

There is no evidence in this case that Juror No. 6 harbored actual bias, or "a state of mind that leads to an inference that the person will not act with entire impartiality." *Gonzalez*, 214 F.3d at 1112.  Petitioner argues that Juror No. 6 withheld the fact that she recognized petitioner because she was afraid that "revelation of that information might thwart her desire to sit on petitioner's case."  Traverse at 16.  There is no evidence of that in the record and the court rejects this argument.  Rather, petitioner's claim regarding the juror's failure to inform the trial judge that she recognized petitioner's face essentially involves *McDonough* - style bias, which turns on the truthfulness of the juror's responses on voir dire, and implied (or presumptive) bias resulting from petitioner's relationship, if any, with Juror No. 6.

After a review of the record, the court concludes that petitioner has failed to demonstrate that Juror No. 6 harbored implied bias.  There is no evidence in the record that the juror responded dishonestly or intended to mislead the trial court when she stated on voir dire that she did not know petitioner.  As she explained later, she recognized petitioner's face but she did not know him, had never spoken to him, and did not even know his name.  The trial judge specifically mentioned that it was plain the juror did not know petitioner at the time she served on the jury.  Under these circumstances, it was not unreasonable for Juror No. 6 to conclude that she could truthfully deny she knew the defendant in this case and that the mere fact she recognized his face was not important enough to disclose.  Certainly, her answers on voir dire are not dishonest.  In the absence of dishonesty, this court cannot find that Juror No. 6 harbored bias.  *McDonough*, 464 U.S. at 556; *Fields*, 503 F.3d at 763.  Nor did the nature of the relationship between petitioner and Juror No. 6 constitute a valid basis for a challenge for cause,[5] carry the "potential for substantial emotional involvement, adversely affecting impartiality," *Tinsley*, 895 F.2d 527, or make it "highly unlikely that the average person could remain impartial

---

[5] To disqualify a juror for cause requires a showing of either actual or implied bias. *Gonzalez*, 214 F.3d at 1111.

1   in his deliberations." *Gonzalez*, 214 F.3d at 1112.  This simply is not the type of "extraordinary"

2   case where bias may be implied or presumed.

3          In any event, as stated by the Ninth Circuit in *Fields*, "[t]o the extent that events or

4   information bearing on [the juror's] honesty in voir dire or impartiality as a juror came after he

5   was empaneled, the evidentiary hearing held by the district court afforded Fields an opportunity

6   to show that [the juror] was not a fair and impartial juror."  503 F.3d at 773.  The same is true

7   here.  The interview with Juror No. 6 did not reveal any impartiality or bias.  *See Dyer*, 151 F.3d

8   at 973 (observing that it follows from the holding in *McDonough* that "an honest yet mistaken

9   answer to a voir dire question rarely amounts to a constitutional violation; even an intentionally

10  dishonest answer is not fatal, so long as the falsehood does not bespeak a lack of impartiality").

11  There is no evidence before this court that the presence of Juror No. 6 on petitioner's jury

12  prejudiced petitioner to the extent that he did not receive a fair trial.  Accordingly, petitioner's

13  claim that his right to a fair trial was violated because Juror No. 6 harbored bias must be denied.

14  ### e.  Applicable Law – Receipt of Extraneous Information

15          The receipt of prejudicial extraneous influences on a jury constitutes misconduct which

16  may result in the reversal of a conviction.  *See Parker v. Gladden*, 385 U.S. 363, 364-65 (1966)

17  (bailiff's prejudicial comments overheard by several jurors that the defendant was "wicked" and

18  "guilty" and that "if there is anything wrong (in finding petitioner guilty) the Supreme Court will

19  correct it" warranted reversal).  "Private communications, possibly prejudicial, between jurors

20  and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate

21  the verdict, at least unless their harmlessness is made to appear."  *Mattox v. United States*, 146

22  U.S. 140, 150 (1892) (murder conviction overturned on Sixth Amendment grounds in part

23  because the bailiff had told the jury during deliberations that "this is the third fellow [the

24  defendant] has killed").  Accordingly, "any private communication, contact, or tampering

25  directly or indirectly, with a juror during a trial about the matter pending before the jury is, for

26  obvious reasons, deemed presumptively prejudicial[.]"  *Remmer v. United States*, 347 U.S. 227,

1   229 (1954) (conviction reversed under *Mattox* when it was shown that during the trial someone

2   told the jury foreman that he could profit by acquitting the defendant).  However, "the

3   government may overcome the presumption [of prejudice] by making a strong contrary

4   showing."  *Caliendo v. Warden, California Men's Colony*, 365 F.3d 691, 696 (9th Cir. 2004).

5   *See also United States v. Armstrong*, 654 F.2d 1328, 1331-33 (9th Cir. 1981) (upholding guilty

6   verdicts but applying the *Mattox* presumption where a juror's husband had taken two obscene

7   phone calls at home from an unidentified third party who said, "Tell your wife to stop hassling

8   my brother-in-law at court"); *United States v. O'Brien*, 972 F.2d 12, 13-15 (1st Cir. 1992)

9   (upholding a guilty verdict but applying the *Mattox* presumption where a police officer who was

10  a potential prosecution witness, but who did not testify, spoke with three jurors during a recess

11  about matters unrelated to the case); *United States v. Betner*, 489 F.2d 116, 117-19 (5th Cir.

12  1974) (ordering a new trial under *Mattox* because the prosecutor conversed with the jury panel

13  during a recess and the trial court failed to conduct an adequate hearing).

14          The *Mattox* rule applies when an unauthorized communication
            with a juror crosses a low threshold to create the potential for
15          prejudice.  A communication is possibly prejudicial, not de
            minimis, if it raises a risk of influencing the verdict.  Prejudice is
16          presumed under these circumstances, and the defendant's motion
            for a new trial must be granted unless the prosecution shows that
17          there is no reasonable possibility that the communication will
            influence the verdict.

18

19  *Caliendo*, 365 F.3d at 697.  Relevant factors in determining whether a communication raised a

20  risk of influencing the verdict include "the length and nature of the contact, the identity and role

21  at trial of the parties involved, evidence of actual impact on the juror, and the possibility of

22  eliminating prejudice through a limiting instruction."  *Id.* at 697 -698.

23          "On collateral review, trial errors - such as extraneous information that was considered

24  by the jury - are generally subject to a 'harmless error' analysis, namely, whether the error had

25  'substantial and injurious' effect or influence in determining the jury's verdict."  *Estrada v.*

26  *Scribner* 512 F.3d 1227, 1235 (9th Cir. 2008) (citing *Jeffries v. Wood*, 114 F.3d 1484, 1491 (9th

14

1  Cir. 1997)) (citing *Brecht*, 507 U.S. at 638).  *See also Rushen v. Spain*, 464 U.S. 114, 115-19 &

2  n.3 (1983) (affirming state court's determination that a juror's ex parte communication with trial

3  judge was harmless beyond a reasonable doubt); *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir.

4  1996) (applying "harmless-error" standard when a venire member stated during voir dire that he

5  had read in a newspaper that the defendant had "pleaded guilty at one time and changed it").  *Cf.*

6  *Caliendo*, 365 F.3d 691, 695-98 (9th Cir. 2004) (prejudice presumed where three jurors had an

7  improper twenty-minute conversation, factually unrelated to the trial, with a key prosecution

8  witness).

9  **f.  The Incident Involving Juror No. 6 and Petitioner's Mother**

10  Even assuming arguendo that the contact between Juror No. 6 and petitioner's mother

11  created the potential for prejudice and constituted juror misconduct, the court concludes that the

12  incident did not have a "substantial and injurious effect or influence in determining the jury's

13  verdict."  *Brecht*, 507 U.S. at 623.  Indeed, there is no evidence that the very brief conversation

14  had any influence at all on the verdict.  First, unlike many of the cases cited above, petitioner's

15  mother was not a witness, an interested party, or a court officer.  Accordingly, her statements did

16  not carry any aura of authority.  Second, there is no evidence Juror No. 6 conveyed the remarks

17  to any other juror or that they influenced the vote of Juror No. 6 herself.  She specifically

18  informed the trial court that she "disregarded" what the woman told her and "didn't feel that it

19  was important."  RT at 448.  Last, the case against petitioner was substantial and there is no

20  evidence the jury verdict was close.  A reviewing court must look to the following factors to

21  determine whether a defendant has suffered prejudice from juror misconduct:

22      (1) whether the material was actually received, and if so, how;

23      (2) the length of time it was available to the jury;

24      (3) the extent to which the juror discussed and considered it;

25      (4) whether the material was introduced before a verdict was
    reached, and if so at what point in the deliberations; and

26

1       (5) any other matters which may bear on the issue of the
    reasonable possibility of whether the extrinsic material affected the
2       verdict.

3   *Estrada*, 512 F.3d at 1238 (quoting *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000)).

4   None of these factors supports a finding of prejudice in this case.  Accordingly, petitioner is not

5   entitled to relief on this claim of juror misconduct.

6         **2.  Prosecutorial Misconduct**

7         Petitioner's next claim is that the prosecutor committed misconduct during closing and

8   rebuttal argument.  Petitioner raised this claim in the same habeas petitions in which he raised

9   his claim of juror misconduct, described above, and it was denied on the same grounds.

10  Respondents argue that the Superior Court's citation to *In re Dixon* constitutes a procedural bar

11  precluding this court from considering the merits of petitioner's claim of prosecutorial

12  misconduct.  Answer at 11-14.  For the reasons explained above, this court concludes that

13  petitioner's claim of prosecutorial misconduct is not barred from federal review.  Accordingly,

14  the court will address this claim on the merits, using de novo review.

15        **a.  Applicable Law**

16        A criminal defendant's due process rights are violated when a prosecutor's misconduct

17  renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

18  However, such misconduct does not, per se, violate a petitioner's constitutional rights.  *Blodgett*,

19  5 F.3d at 1191 (citing *Darden*, 477 U.S. at 181, and *Campbell v. Kincheloe*, 829 F.2d 1453, 1457

20  (9th Cir. 1987)).  Claims of prosecutorial misconduct are reviewed "'on the merits, examining the

21  entire proceedings to determine whether the prosecutor's [actions] so infected the trial with

22  unfairness as to make the resulting conviction a denial of due process.'"  *Johnson v. Sublett*, 63

23  F.3d 926, 929 (9th Cir. 1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765

24  (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v Calderon*, 281 F.3d 851,

25  868 (9th Cir. 2002).  Relief on such claims is limited to cases in which the petitioner can

26  establish that prosecutorial misconduct resulted in actual prejudice.  *Johnson*, 63 F.3d at 930

(citing *Brecht*, 507 U.S. at 637-38); *see also Darden*, 477 U.S. at 181-83; *Turner*, 281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict.  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).  Finally, it is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

In considering claims of prosecutorial misconduct involving allegations of improper argument the court is to examine the likely effect of the statements in the context in which they were made and determine whether the comments so infected the trial with unfairness as to render the resulting conviction a denial of due process.  *Turner*, 281 F.3d at 868; *Sandoval v. Calderon*, 241 F.3d 765, 778 (9th Cir. 2001); *see also Donnelly*, 416 U.S. at 643; *Darden*, 477 U.S. at 181-83.   Thus, in order to determine whether a prosecutor engaged in misconduct in closing argument, it is necessary to examine the entire proceedings to place the remarks in context.  *See United States v. Robinson*, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . ."); *Greer*, 483 U.S. at 765-66; *Williams v. Borg*, 139 F.3d 737, 745 (9th Cir. 1998).

### b.  Vouching

Petitioner first claims that the prosecutor improperly vouched for the credibility of the victim, who was a witness for the prosecution.  Pet. at 5.  He specifically objects to the following argument:

> The fact is, that this is not something that she contrived, but rather this is something that she was drawn into by the Defendant.
>
> So when you get right down to it, not too many people are going to lie about going out and becoming prostitutes.
>
> When we lie and stretch the truth, it's about the good stuff. You should have seen so and so on the golf course the over [sic] day, shot a 68, or you should have seen the fish I hooked.  It was fantastic.  Or you should have seen me in that red dress at the Christmas party, I looked good.  Or you should have seen my son

17

1    come home and he got everything right on that piece of paper.  He
     got every examination question, even arithmetic exam, even
2    though his father isn't very good with arithmetic, he got them all
     right.
3
     These are things you brag about.
4
     But you don't brag about becoming a prostitute.  You don't go to
5    14 strangers and make this stuff up.

6    RT at 344-45.

7         It is improper for the prosecution to vouch for the credibility of a government witness.

8    *United States v. Young*, 470 U.S. 1, 18 (1985).  "Improper vouching typically occurs in two

9    situations: (1) the prosecutor places the prestige of the government behind a witness by

10   expressing his or her personal belief in the veracity of the witness, or (2) the prosecutor indicates

11   that information not presented to the jury supports the witness's testimony."  *United States v.*

12   *Brooks*, 508 F.3d 1205, 1209 (9th Cir. 2007) (quoting *United States v. Hermanek*, 289 F.3d

13   1076, 1098 (9th Cir. 2002).  *See also United States v. Garcia-Guizar*, 160 F.3d 511, 520 (9th

14   Cir. 1998).  In evaluating a claim of prosecutorial misconduct, "a court should not lightly infer

15   that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury,

16   sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging

17   interpretations."  *King v. Schriro*  537 F.3d 1062, 1070 -1071 (9th Cir. 2008) (quoting *Donnelly*,

18   416 U.S. at 647-48).

19        The court concludes that the prosecutor's remarks, quoted above, did not constitute

20   improper vouching.  The comments neither placed the government's sanction on the victim's

21   testimony nor implied that information not in evidence showed what the truth really was.  He

22   pointed to nothing concrete that would bolster the victim's testimony, nor did he imply that a

23   credibility determination had been made by his office, the court, or anyone else.  He did not

24   stand behind the truthfulness of the victim's testimony, provide personal assurances of her

25   veracity, suggest or refer to something that was not in the record, or invite the jurors to rely on

26   the integrity of the government.  At most, the prosecutor was making the common sense

18

1  argument that most people do not brag about something they are ashamed of.  This does not

2  constitute vouching.

3           Even if the prosecutor's statements were improper, they did not rise to the level of a due

4  process violation.  The jurors were specifically instructed that their duty was to decide the case

5  solely on the basis of the evidence received at trial and any facts to which the attorneys had

6  agreed or stipulated.  Clerk's Transcript on Appeal (CT) at 176, 189.  The jury was also

7  instructed that arguments and statements by lawyers are not evidence.  *Id.* at 188.  "Such

8  instructions dilute the potential prejudice arising from improper comments."  *United States v.*

9  *Koon*, 34 F.3d 1416, 1445 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996); *see also*

10 *United States v. Necoechea*, 986 F.2d 1273, 1283 (9th Cir. 1993) ("Likewise, the vouching that

11 occurred during closing argument was effectively neutralized by the court's instruction that

12 comments of counsel are not evidence.").

13          Because the prosecutor's statements did not rise to the level of vouching and did not

14 render the trial fundamentally unfair, petitioner is not entitled to relief on this claim.

15                    **c.  Personal Opinion of Petitioner's Guilt**

16          Petitioner argues that the prosecutor committed misconduct by expressing his opinion

17 that petitioner was guilty.  He specifically objects to the prosecutor's statement that prior to

18 petitioner's arrest he had "tak[en] himself with all of his guilt and all of his faults and all of his

19 flaws into that bathroom and wait there for the sex act to take place . . ."  RT at 358.

20          It is improper for a prosecutor to express his personal opinion about a defendant's guilt.

21 *Young*, 470 U.S. at 19.  This is because "such comments can convey the impression that

22 evidence not presented to the jury, but known to the prosecutor, supports the charges against the

23 defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the

24 evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the

25 Government and may induce the jury to trust the Government's judgment rather than its own

26 view of the evidence."  *Id.* at 18-19.

1    The prosecutor's comments in this case do not rise to the level of a personal opinion that

2    petitioner was guilty.  The prosecutor did not suggest that he was relying on any information

3    outside the evidence introduced at trial to support the charges against petitioner, nor did he put

4    the government's imprimatur on any opinion of petitioner's guilt.  Even if the comments were

5    improper, the prosecutor's fleeting use of the word "guilt" did not "undermine the fairness of the

6    trial and contribute to a miscarriage of justice."  *Id.* at 20.  As noted above, the jury was

7    instructed that arguments by the attorneys were not evidence and that they must decide the issue

8    of petitioner's guilt based on the evidence introduced at trial.  These instructions neutralized any

9    prejudice that might have been occasioned by the prosecutor's brief remark.

10   For all of these reasons, petitioner is not entitled to relief on this claim.

11              **d.  Inflammatory Comments**

12   Petitioner claims that the prosecutor committed misconduct by virtue of several

13   inflammatory comments he made during his closing argument.  Petitioner specifically objects to

14   the prosecutor's statements that: (1) the victim was a "number one candidate for predators like

15   [petitioner];" (2) "when you look at the definition in the dictionary for pimp, his face will be

16   there;" (3) petitioner was "someone who is trading in human life;" (4) petitioner was guilty

17   "because he's a sexual predator;" (5) "it will stop when the people tell this predator it will stop;"

18   (6) "you have a duty to tell this man over here that we're not going to take it any more, that

19   we're not going to let you break the law and be a predator to children, our children;" (7)

20   "[w]hether you make the extra determination in your mind that he's a predator is irrelevant, but

21   the fact that he's a predator is a fact that's born out;" (8) petitioner was "worthless;" and (9) this

22   case was "an incredibly tragic one."  RT at 356-57, 358, 360, 363-64, 391.

23   After a review of the entire closing argument, this court concludes that the prosecutor's

24   comments in closing argument did not constitute misconduct.  In fashioning closing arguments,

25   prosecutors are allowed "reasonably wide latitude," *United States v. Birges*, 723 F.2d 666,

26   671-72 (9th Cir. 1984), and are free to argue "reasonable inferences from the evidence." *United*

1    *States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989). *See also Ducket v. Godinez*, 67 F.3d 734,

2    742 (9th Cir. 1995). "[Prosecutors] may strike 'hard blows,' based upon the testimony and its

3    inferences, although they may not, of course, employ argument which could be fairly

4    characterized as foul or unfair." *United States v. Gorostiza*, 468 F.2d 915, 916 (9th Cir. 1972).

5        Although it might have been harsh to refer to petitioner as a "predator," the argument

6    was not "foul or unfair." In essence, the prosecutor was arguing that petitioner had preyed on

7    the underage victim. This was a fair inference from the evidence introduced at petitioner's trial.

8    *See Necoechea*, 986 F.2d at 1282 (not "foul" to refer to defendant as a "dope dealer" even

9    though purpose of the trial was to determine whether the defendant was a drug dealer)*; United*

10    *States v. Makhlouta*, 790 F.2d 1400, 1403 (9th Cir.1986) (not misconduct for the prosecutor to

11    ask, "what kind of family man sells heroin that kids inject?").

12        The court also notes that the prosecutor made the following remarks in his rebuttal

13    argument:

14              Ladies and gentlemen, . . . we don't have to prove to you his client
                   is a predator.
15

16              Whether he's a predator or not, the elements are there still for
                   pimping and pandering. Whether you make the extra
                   determination in your mind that he's a predator is irrelevant, but
17              the fact that he's a predator is a fact that's born out.

18    RT at 391. The prosecutor later stated that he would "try not to use the word predator;" that the

19    jury should "cool down" if anything he had said "inflamed [their] passions;" that the jury should

20    "look at the case calmly, reflect on the case clearly;" and that the jurors should "push aside any

21    kind of passion I might exhume based upon the fact that I am advocate in this case." *Id.* at 391.

22    These comments further neutralized any damage that might have been caused by the prosecutor's

23    remarks, focused the jurors on their duty to determine only whether petitioner was guilty of the

24    crimes charged, and dispelled any insinuation that petitioner had been convicted or was being

25    charged with being a sexual predator.

26    ////

1    The court also concludes that the prosecutor's other remarks did not rise to the level of

2    misconduct.  His statements that petitioner was "worthless," that this case was "tragic," and that

3    petitioner was a "pimp," although harsh, did not render petitioner's trial fundamentally unfair.

4    *See Darden*, 477 U.S. at 180 n.10, 11 & 12; 182 (not improper argument where prosecutors

5    called the defendant an "animal," asserted that he should be kept on a leash, expressed their wish

6    that his face had been blown off during his crimes, and argued that he deserved the death penalty

7    to prevent him from ever terrorizing the public again); *Comer v. Schriro*, 463 F.3d 934 (9th Cir.

8    2006) (argument not improper where prosecutor called defendant "monster," "filth," and a

9    "reincarnation of the devil," because the argument did not manipulate or misstate the evidence,

10   nor did it implicate other specific rights of the accused such as the right to counsel or the right to

11   remain silent); *Dubria v. Smith*,  224 F.3d 995, 1004 (9th Cir. 2000) (prosecutor's reference to

12   defense argument as "a piece of garbage" and defendant as "a liar" found not to be improper).

13   The prosecutor did not misstate any evidence or implicate important constitutional rights.  In

14   addition, as noted above, the trial court instructed the jurors that their decision was to be made

15   on the basis of the evidence alone, that the arguments of counsel were not evidence, and that

16   they were not to be influenced by sympathy or prejudice.  CT at 176.   Under these

17   circumstances, and for all of the foregoing reasons, the prosecutor's remarks were not

18   constitutionally impermissible.  *Darden*, 477 U.S. at 182; *Comer*, 463 F.3d at 960 -961.

19   Accordingly, petitioner is not entitled to relief on this claim.

20                  **e.  Comment on Petitioner's Failure to Testify**

21        Petitioner claims that the prosecutor improperly commented on his failure to testify when

22   he stated that: (1) the evidence against petitioner "appear[ed] to be uncontradicted" because

23   "there's no indication of it otherwise;" (2) the evidence was "uncontroverted" that all of the

24   victim's money went to petitioner; (3) the evidence was "uncontroverted" that petitioner "had a

25   sexual relationship with a girl who was 14 years old;" and (4) "when you're deciding Counts 1

26   ////

1  through 8, it's clear the evidence is uncontroverted, that the Defendant was having a sexual

2  relationship with the victim in this case."  RT at 340, 358, 363, 390.

3          The Fifth Amendment prohibits a prosecutor from commenting to the jury regarding the

4  defendant's failure to testify at trial.  *See Griffin v. California*, 380 U.S. 609, 615 (1965).  A

5  prosecutorial comment in argument runs contrary to the *Griffin* rule "if it is manifestly intended

6  to call attention to the defendant's failure to testify, or is of such a character that the jury would

7  naturally and necessarily take it to be a comment on the failure to testify."  *Lincoln v. Sunn*, 807

8  F.2d 805, 809 (9th Cir. 1987).  However, relief is to be granted on such a claim only "'where

9  such comment is extensive, where an inference of guilt from silence is stressed to the jury as a

10  basis for the conviction, and where there is evidence that could have supported acquittal.'"  *Id.*

11  (citations omitted).  *See also Beardslee v. Woodford*, 358 F.3d 560, 587 (9th Cir. 2004); *United*

12  *States v. Olano*, 62 F.3d 1180, 1196 (9th Cir. 1995); *Blodgett*, 5 F.3d at 1192.  Conversely, relief

13  will not be granted where the prosecutorial comment is a single, isolated incident, does not stress

14  the inference of guilt from silence as a basis for the verdict and is followed by a curative

15  instruction.  *Lincoln*, 807 F.2d at 809.

16          This court concludes that no error of constitutional magnitude occurred here.  The

17  prosecutor was essentially commenting on the fact that the defense presented no witnesses to

18  rebut the factual allegations raised by the trial testimony.  A prosecutor is entitled to comment on

19  a defendant's failure to present witnesses so long as it is not phrased to call attention to the

20  defendant's own failure to testify.  *United States v. Hill*, 953 F.2d 452, 460 (9th Cir.1991). *See*

21  *also United States v. Ponce*, 51 F.3d 820, 831 (9th Cir. 1995) (not an improper comment on

22  defendant's failure to testify where prosecutor argued, "But I ask you to look at the various

23  things that the defense attorneys did not show you.  Look at the things the defense attorneys did

24  not offer you"); *United States v. Kessi*, 868 F.2d 1097, 1106 (9th Cir. 1989) ("It is permissible

25  for the prosecutor to call attention to [defendant's] failure to present exculpatory evidence so

26  long as he does not comment on the decision not to testify").  The prosecutor's comments in this

1   case do not suggest that petitioner should have testified.  Thus, they are permissible.  *See United*

2   *States v. Wasserteil*, 641 F.2d 704, 709-10 (9th Cir. 1981) ("'[a] comment on the failure of the

3   defense as opposed to the defendant to counter or explain the testimony presented or evidence

4   introduced is not an infringement of the defendant's Fifth Amendment privilege.'" (quoting

5   *United States v. Dearden*, 546 F.2d 622, 625 (5th Cir. 1977)).

6          The court notes that petitioner's jury received the following instruction:

7          A defendant in a criminal trial has a constitutional right not to be
           compelled to testify.  You must not draw any inference from the
8          fact that a defendant does not testify.  Further, you must neither
           discuss this matter nor permit it to enter into your deliberations in
9          any way.

10         In deciding whether or not to testify, the defendant may choose to
           rely on the state of the evidence and upon the failure, if any, of the
11         People to prove beyond a reasonable doubt every essential element
           of the charge against him.  No lack of testimony on defendant's
12         part will make up for a failure of proof by the People so as to
           support a finding against him on any such essential element.

13

14   CT at 201-02.  This instruction clearly informed the jurors that they could not treat petitioner's

15   silence as substantive evidence of guilt, that they were not to draw any negative inference from

16   petitioner's failure to testify, and that they could not penalize petitioner for failing to fill in

17   material gaps in the evidence.  In any event, the prosecutor's comments in his closing argument

18   did not ask the jury to draw an adverse inference based on petitioner's election not to testify.

19   Given these circumstances, petitioner has failed to show prejudicial error by virtue of the

20   prosecutor's comments.  *See Rice v. Wood*, 77 F.3d 1138, 1143 (9th Cir. 1996) (*Griffin* error is

21   amenable to harmless-error analysis).  Accordingly, petitioner is not entitled to relief on this

22   claim.

23                          **f.  Misleading Jurors about the Law**

24          Petitioner claims that the prosecutor committed misconduct by allegedly misleading the

25   jury about the meaning of "reasonable doubt."  Pet. at 5; Traverse at 29-30.  He specifically

26   objects to the following argument:

                                              24

1    The issue here is what the level of certainty is, and it is not beyond
     all doubt whatsoever, and it is not beyond a reasonable doubt, and
2    I am going to weigh you down with about two minutes of
     instructions that the Court is going to give you, but just so we're
3    clear.

4    Reasonable doubt is defined as follows –

5    THE COURT:  It is beyond a reasonable doubt, okay.

6    MR. PONGRANTZ (petitioner's trial counsel):  Yes, Your Honor,
     that's clear.
7
     Reasonable doubt is defined as follows:
8
     It's not a mere possible doubt because everything relating to
9    human affairs is open to some possible or imaginary doubt.

10   Is the sun going to rise tomorrow?  Who knows.  It's possible it
     may not.  It's possible the world comes to an end.  Anything is
11   possible.

12   But what we're talking about here is what's reasonable doubt.
     And reasonable doubt is defined as the state of the case which after
13   the entire comparison and consideration of all the evidence leaves
     the minds of the jurors in that condition that they cannot say they
14   feel an abiding conviction of the truth of the charge.

15   RT at 385.

16          Viewing the record as a whole, including the instruction given to petitioner's jury

17   defining reasonable doubt,[6] the court does not find constitutional error resulting from these

18   comments by the prosecutor.  Any inadvertent error made by the prosecutor when he stated that

19   "it is *not* beyond a reasonable doubt" was cleared up by the court's immediate correction that "it

20   *is* beyond a reasonable doubt" and the prosecutor's response, "Yes, Your Honor, that's clear."

21   The concept of reasonable doubt was adequately explained to petitioner's jury.  Accordingly,

22   petitioner's claim that his due process rights were violated when the prosecutor mis-spoke must

23   be denied.

24   ////

25

26          [6] *See* CT at 205.

### g.  Cumulative Errors

Petitioner questions whether "cumulative errors" by the prosecutor violated his Fifth Amendment right to a fair trial.  Pet. at 5; Traverse at 30.  The Ninth Circuit has concluded that under clearly established United States Supreme Court precedent the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal.  *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S. 284, 290 (1973)).  "The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."  *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507 U.S. at 637).  *See also Necoechea*, 986 F.2d at 1283 ("although individual errors looked at separately may not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial as to require reversal").

This court has addressed each of petitioner's claims of prosecutorial error and has concluded that no error of constitutional magnitude occurred at his trial in state court.  This court also concludes that the alleged errors, even when considered together, did not render petitioner's defense "far less persuasive," nor did they have a "substantial and injurious effect or influence on the jury's verdict."  In addition, the court notes that petitioner's counsel raised no objection to the prosecutor's closing remarks.  This fact, while not dispositive, is relevant to an assessment of fundamental unfairness.  Apparently, even petitioner's counsel did not perceive any undue impropriety in the prosecutor's remarks.

For these reasons, petitioner is not entitled to relief on his claim that the cumulative effect of prosecutorial errors violated his right to due process.

////

////

26

### 3. Ineffective Assistance of Counsel

Petitioner claims that his trial and appellate counsel rendered ineffective assistance. After setting forth the applicable legal principles, the court will analyze these claims in turn below.

### a. Legal Standards

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See, Strickland*, 466 U.S. at  687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id.* at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.  See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  *Kimmelman*

1    *v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).  There is in

2    addition a strong presumption that counsel "exercised acceptable professional judgment in all

3    significant decisions made."  *Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466

4    U.S. at 689).  However, that deference "is predicated on counsel's performance of sufficient

5    investigation and preparation to make reasonably informed, reasonably sound judgments."

6    *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

7          The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith v.*

8    *Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

9    However, an indigent defendant "does not have a constitutional right to compel appointed

10   counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

11   professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751

12   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  *Id*.  Otherwise, the

13   ability of counsel to present the client's case in accord with counsel's professional evaluation

14   would be "seriously undermined."  *Id*.  *See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th

15   Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and

16   is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

17   meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a

18   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

19   to raise a weak issue.  *See Miller*, 882 F.2d at 1434.

20         The petitioner must also show prejudice from the inadequate performance.   To establish

21   prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably

22   would have prevailed on appeal.  *Id*. at 1434 n.9.

23                        **b.  State Court Opinion**

24         The last reasoned decision on petitioner's claims of ineffective assistance of counsel is

25   the decision of the California Superior Court on habeas review.  Answer, Ex. G.  The Superior

26   Court denied the claims with the following reasoning:

                                            28

**A.  Trial Counsel**

Petitioner claims that trial counsel failed to file a motion to suppress based on lack of standing, but that there was evidence of standing.  He also claims that counsel failed to investigate the issue of juror misconduct, failed to ask for a jury instruction about a witness's drug use, elicited damaging testimony from prosecution witnesses, and failed to object to the prosecutor's closing and rebuttal.  None of these claims is supported by any evidence. There are no transcripts attached; nor is there any outside evidence to support, for example, that Petitioner had standing to object to the search.  Therefore, the claim is without merit.

**B.  Appellate Counsel**

Petitioner claims that appellate counsel refused to raise the issue of juror misconduct.  It appears that the issue was not raised on appeal.  However, there is no evidence to support Petitioner's contention that it was wrongfully omitted from the appeal.  There is, again, no evidence of what the alleged misconduct consisted of or how it prejudiced the outcome of the trial.  Therefore, there has been no showing that appellate counsel's conduct was insufficient.

Answer, Ex. H.

### c.  **Trial Counsel**

Petitioner claims that his trial counsel rendered ineffective assistance when he: (1) failed to file a motion to suppress evidence; (2) failed to file a motion for new trial based on juror misconduct; (3) failed to investigate juror misconduct; (4) failed to object to the prosecutor's improper remarks during his closing argument; (5) failed to request a jury instruction regarding the victim's use of drugs; and (6) elicited damaging testimony from the victim.  After review, the court concludes that these claims should be denied.

### i.  **Motion to Suppress**

As described above in the background section, petitioner wrote several letters to the victim from jail in which he instructed the victim on how to engage in prostitution, including "where to go, what to say, and what to charge for sexual acts."  Opinion at 2; Clerk's Augmented Transcript on Appeal (ACT) at 10-43.  These letters were discovered in a bag located in the motel room where the victim and petitioner were arrested and were introduced into evidence at

1    petitioner's trial.  RT at 294; ACT at 10-43.  Petitioner claims that his trial counsel committed

2    misconduct when he failed to file a motion to suppress these letters on Fourth Amendment

3    grounds.  Pet. at 5; Traverse at 31-38.  He argues that his counsel decided not to file a motion to

4    suppress because he erroneously believed petitioner did not own the bag and therefore had no

5    standing to bring such a motion.  *Id.*  Petitioner argues that the evidence clearly established he

6    owned the bag containing the letters and that a motion to suppress would have had merit.

7    Respondent, on the other hand, argues that petitioner has failed to establish prejudice with

8    respect to this claim because a motion to suppress would have been denied even if petitioner had

9    standing to bring one.  Answer at 25-27.

10          The record before the court reflects that petitioner filed a motion for substitute counsel

11   pursuant to *People v. Marsden*, 2 Cal. 3d 118 (1970).  RT at 2; Pet., Ex. C (Reporter's Transcript

12   of Marsden motion).  One of the grounds for the *Marsden* motion was that trial counsel

13   improperly failed to file a motion to suppress the bag containing the letters.  Pet., Ex. Cs at 4-5.

14   Petitioner's trial counsel informed the court that he had considered whether to file a suppression

15   motion related to the seized letters but decided it had "very little merit."  *Id.* at 6.  Counsel

16   explained his reasoning as follows:

17              MR. RILEY (petitioner's trial counsel):  1538.5 was not brought,
                your Honor.  I discussed [bringing a motion to suppress] with
18              [petitioner] and I told him in my view it have [sic] very little merit.

19              THE COURT:  What's the state of the law with respect to
                searching containers?
20
                MR. RILEY:  That if it is found in, if it is found in the immediate
21              presence under the defendant's control, that it may be used.

22              I discussed it with him and told him that, that in my view it had no,
                no merit along those lines.
23
                He was on parole . . . [¶]
24
                It was a search incident to arrest in the sense that apparently the
25              parole office had not given his consent to the search.

26   *Id.*  The trial court tentatively denied the *Marsden* motion but informed petitioner that the court

1  would resolve the issue of whether petitioner's Fourth Amendment rights had been violated by

2  the search and seizure of the bag in any event. *Id.* at 8.

3         The trial court subsequently concluded that a motion to suppress the bag containing the

4  letters would not have been successful. RT at 19-23.  The court reasoned that petitioner had no

5  standing to bring a motion to suppress because the bag appeared to belong to the victim. *Id.* at

6  20.  Alternatively, the court reasoned that the search and seizure was proper because it was

7  incident to the arrests of petitioner and the victim. *Id.* at 20-23.  The court concluded:

8              I'm satisfied there's just not sufficient evidence here to challenge
             the thing.
9
             The Court will confirm its earlier ruling with respect to Marsden.
10
             And similarly, the Court is satisfied that a 1538.5 motion would
11           not have been successful in this matter.

12  RT at 23.

13         The conclusion of the trial court that petitioner did not have standing to bring a motion to

14  suppress the bag containing the letters is not an unreasonable construction of the facts before the

15  court.  Petitioner provides evidence that there was some men's clothing in the bag and argues

16  that this proves the bag belonged to him. *See* Pet., Ex. C at 13; RT at 294, 298; Traverse at 31,

17  34.  However, as noted by the trial court, the bag also contained letters written to the victim,

18  providing some evidence that the bag may have belonged to her.  Petitioner has provided no

19  conclusive proof that he owned the bag.

20         Even assuming that petitioner had standing to bring a motion to suppress, the trial court's

21  conclusion (and the conclusion of petitioner's trial counsel) that the search and seizure of the bag

22  was proper as incident to the arrest of the victim and/or petitioner is also reasonable.  The record

23  reflects that petitioner and the victim were sharing the small motel room and bathroom where the

24  arrests were conducted, and that the bag was seized as those arrests were taking place.  RT at 98,

25  294, 297-98, 314, 323.  Counsel's decision not to file a motion to suppress under those

26  circumstances was not outside the wide range of reasonable professional assistance. *See United*

31

1  *States v. Smith*, 389 F.3d 944 (9th Cir. 2004) (the "search-incident-to-arrest" exception to the

2  warrant requirement permits law enforcement officers to conduct a warrantless search of a

3  person who is arrested and his/her surrounding area; critical inquiry is whether search was

4  roughly contemporaneous with arrest).  *See also Chimel v. California*, 395 U.S. 752, 762-63

5  (1969) (police are justified in searching an arrestee's person and the area within his immediate

6  control, defined as the area from within which he/she might gain possession of a weapon or

7  destructible evidence).  Petitioner's lengthy arguments in the traverse that the search was

8  unlawful because of the factual circumstances under which it was conducted are not supported

9  by the record or any other evidence.  *See* Traverse at 31-34, 36-38.[7]

10       Petitioner has failed to failed to demonstrate that his trial counsel's decision not to file a

11  motion to suppress was deficient or that petitioner suffered prejudice as a result of counsel's

12  inaction.  Accordingly, he is not entitled to relief on this claim.

13                  **ii.  <u>Motion for New Trial based on Juror Misconduct</u>**

14       Petitioner next claims that his trial counsel rendered ineffective assistance by failing to

15  file a motion for new trial based on juror misconduct, even though petitioner provided counsel

16  with a "line of questioning to prove Juror 6 knew petitioner & petitioner knew juror & family."

17  Pet. at 6.

18       Respondent argues that petitioner's claim in this regard is unexhausted.  Answer at 27.

19  The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of

20  habeas corpus.  28 U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion requirement by

21  providing the highest state court with a full and fair opportunity to consider each of his claims

22  before presenting them to the federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

23  By order dated April 26, 2007, this court found that respondent had waived the exhaustion

24  requirement as to petitioner's claim that his trial counsel rendered ineffective assistance by

25  _____

26      [7] Specifically, the record does not establish that petitioner was "arrested and cuffed before the search," as petitioner alleges.  *See* Traverse at 37; RT at 293-323.

1   failing to file a motion for new trial based on juror misconduct.  Accordingly, the court will

2   consider this claim on the merits.[8]

3        The state court record reflects that the trial judge declined to make any rulings regarding

4   juror misconduct after questioning Juror No. 6, preferring to wait until the issue was before him

5   in connection with a motion for new trial.  RT at 454.  Trial counsel informed the court that he

6   had not decided whether to file such a motion.  *Id.* at 456.  A motion for new trial was never

7   filed.  For the reasons set forth above, this court has concluded that Juror No. 6 did not commit

8   misconduct.  Under these circumstances, trial counsel's decision not to file a motion for new trial

9   on the grounds of juror misconduct did not constitute deficient performance.  There is, of course,

10  no obligation to raise meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at

11  687-88 (requiring a showing of deficient performance as well as prejudice).  Accordingly,

12  petitioner is not entitled to relief on this claim.

13                    ### iii.  Failure to Investigate Juror Misconduct

14        Petitioner claims that his trial counsel rendered ineffective assistance by failing to

15  "adequately investigate jury misconduct."  Pet. at 6.  In the traverse, petitioner argues that his

16  trial counsel was unprepared for the hearing with Juror No. 6, and that his "line of questioning

17  was unpersuasive, ambiguous, and frivolous."  Traverse at 35.

18        After a review of the relevant record, this court concludes that the performance of

19  petitioner's trial counsel during the questioning of Juror No. 6 was well within the wide range of

20  reasonable professional assistance.  The juror was thoroughly questioned by counsel about her

21  connection with petitioner and his family and the incident concerning petitioner's mother.

22  Petitioner suggests that counsel should have "subpoenaed school records from Hiram Johnson

23

24        [8] Even if the claim were not exhausted, this court would recommend that it be denied
    pursuant to 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied
25  on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in
    the courts of the State").  *See also Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (a
26  federal court considering a habeas petition may deny an unexhausted claim on the merits when it
    is perfectly clear that the claim is not "colorable").

High School to prove Juror 6 knew petitioner" and "should have called Juror 6 mother and brothers whom knew Juror 6 knew petitioner." Traverse at 38.  However, petitioner does not provide any evidence of what the high school records would have revealed or the substance of any witness testimony.  Under these circumstances, petitioner cannot demonstrate prejudice with respect to this claim.  *See Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim denied where he presented no evidence concerning what counsel would have found had he investigated further, or what lengthier preparation would have accomplished); *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (no ineffective assistance where petitioner failed to explain "what compelling evidence additional interviews would have unearthed or to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds");  *United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).  *Cf. Lord v. Wood*, 184 F.3d 1083, 1085 (9th Cir. 1999) (petitioner's ineffective assistance claim granted where counsel failed to personally interview witnesses whose testimony, if believed, would have cleared petitioner of murder).

Petitioner has failed to demonstrate either deficient performance or prejudice with respect to this claim.  Accordingly, he is not entitled to habeas relief.

### iv.  Failure to Object to the Prosecutor's Closing Remarks

Petitioner claims that his trial counsel rendered ineffective assistance because of his failure to object to the prosecutor's inflammatory closing remarks, described above in connection with petitioner's claim of prosecutorial misconduct.  Pet. at 6; Traverse at 38. Petitioner argues that if counsel had objected to the prosecutor's closing argument, the result of

the proceedings would have been different and "it would have preserved petitioner's rights on direct appeal where appellate court may have reversed conviction in the face of constitutional violations or fundamental fairness." Traverse at 38.

Petitioner has failed to demonstrate prejudice with respect to this claim. After a review of the record, this court concludes there is no reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Counsel's failure to object to the prosecutor's closing argument does not "undermine confidence in the outcome" of petitioner's trial. *Id.* Accordingly, petitioner is not entitled to habeas relief.

### v.   Failure to Request a Jury Instruction Regarding the Victim's Drug Use

Petitioner claims that his trial counsel rendered ineffective assistance by failing to request jury instructions to the effect that "the prosecution's star witness was a drug addict" and that her testimony should be viewed with caution because she was addicted to drugs and had an incentive to "cooperate so that she would be released to obtain drugs for herself." Traverse at 39.

Petitioner has failed to demonstrate prejudice with respect to this claim. During her cross-examination, the victim admitted that she was a heavy user of crack cocaine and that she supported her cocaine habit with money she earned from prostitution. RT at 230, 250-52.[9]  In addition, the jurors were instructed that they were the sole judges of the believability of a witness (CT at 196); that they could consider anything that had a tendency to prove or disprove the truthfulness of a witness' testimony, including the ability of the witness to be aware of or remember any matter about which he/she testified, the existence of bias or other motive, and past criminal conduct of a witness amounting to a misdemeanor (*id.* at 196); and that they should give the testimony of a single witness whatever weight they thought it deserved (*id.* at 200).

---

[9]  The victim was unavailable for trial, so her preliminary hearing testimony was read into the record.  (RT at 76.)

1  Petitioner's jurors knew, therefore, that the victim was a heavy drug user and a prostitute and

2  that they should give her testimony whatever weight it deserved in light of those considerations.

3  Counsel's failure to request cumulative jury instructions to the effect that the victim was a "drug

4  addict" and that her testimony should be viewed with caution did not result in prejudice.

5  Accordingly, petitioner is not entitled to relief on this claim.

6  ### vi.  **The Victim's Testimony**

7        Petitioner claims that his trial counsel rendered ineffective assistance by eliciting

8  damaging testimony from the victim. Pet. at 6.  In the traverse, petitioner argues that trial

9  counsel's "complete line of questioning" of the victim "on and surrounding issues concerning

10  the alleged sexual contact was damaging."  Traverse at 38.  Petitioner also complains that his

11  trial counsel failed to elicit evidence that would have impeached the victim's testimony.  Pet. at

12  6; Traverse at 38.  He argues:

13          Not once did trial counsel try to impeach [the victim] with the fact
14          that no sexual contact was ever made between petitioner and [the
           victim].  Nor did counsel ever try to establish the truth that no
15          sexual contact was ever made.  Counsel never asked [the victim] if
           she could identify petitioner's body parts which would be
16          consistent with her co-called knowledge of a sexual relationship
           with petitioner.  Trial counsel failed to establish that no blood
17          samples, saliva samples, tissue samples, or any other evidence was
           taken to prove a sexual relationship and it was [the victim's] word
           with no other proof.  Instead, trial counsel asked her an onslot (sic)
18          of voyeuristic questions damaging to the defense."

19  Traverse at 39.

20        Petitioner has failed to demonstrate prejudice with respect to this claim.  There is no

21  evidence that the outcome of the proceedings would have been different if counsel had attempted

22  to impeach the victim with questions designed to disprove her testimony that she and petitioner

23  had a sexual relationship.  Indeed, such questions might have backfired.  In the absence of

24  evidence that petitioner was prejudiced by trial counsel's performance, he is not entitled to

25  habeas relief.

26  ////

1   Petitioner has also failed to establish that his trial counsel's performance with respect to

2   his questioning of the victim was deficient.  After a review of the record, the court does not find

3   that counsel's cross-examination was outside the wide range of reasonable professional

4   assistance.  Accordingly, petitioner's claim that his trial counsel rendered ineffective assistance

5   in connection with his cross-examination of the victim should also be denied.

6                              **d.  Appellate Counsel**

7   Petitioner's final claim is that his appellate counsel rendered ineffective assistance

8   because of his failure to raise claims of juror misconduct, ineffective assistance of trial counsel,

9   and prosecutorial misconduct.  Pet. at 6; Traverse at 40-42.  As described above, this court has

10  concluded that these claims lack merit.  Appellate counsel's decision to press claims with

11  arguably more merit than the claims suggested by petitioner was "within the range of

12  competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759,

13  771 (1970).  Petitioner has also failed to demonstrate that he probably would have prevailed if

14  his appellate counsel had raised these claims.  He has therefore failed to establish prejudice.

15  *Miller*, 882 F.2d at 2434 n.9.

16  **III.    Conclusion**

17  For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

18  application for a writ of habeas corpus be denied.

19  These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days

21  after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

24  ////

25  ////

26  ////

1   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:   January 6, 2009.

4

5                                    EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26